UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANGEL QUITO,                                            **COMPLAINT**


                                                        **16 cv 3325**
                                                        **ECF Case**

                              Plaintiff,

                   vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
STEPHEN GUINEY and JOHN DOE,
in their individual and official capacities,            **JURY TRIAL DEMANDED**

                              Defendants.
------------------------------------------------------------x

Plaintiff Angel Quito, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:


## PRELIMINARY STATEMENT

1.   This civil rights action arises from the false arrest and malicious prosecution of

Angel Quito ("Plaintiff"), who was playing a card game with his family in a New York

City park when the individual defendants arrested him and charged him with gambling.

Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983")

against the individual defendants for false arrest, malicious prosecution, and failure to

intervene, and a *Monell* claim against the City of New York for the same constitutional

violations.  Additionally, Plaintiff asserts analogous claims under New York Law against

the individual defendants, and against the City of New York under the doctrine of

*respondeat superior*.  Plaintiff seeks compensatory and punitive damages, lost wages,

costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.  This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.  Plaintiff Angel Quito is a 39-year-old man, a construction worker, and a resident of Manhattan.

7.  The individually named defendants Police Officer Stephen Guiney (Shield # 24542) ("PO Guiney") and Police Officer John Doe ("PO Doe") (collectively, the

"individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.      On the date of the incident giving rise to this complaint, the individual defendants were assigned to the 26th Precinct.

9.      Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident.  At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on February 9, 2016.

13.     This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

### A Family Gathering in the Park

14.     On the evening of Friday, July 31, 2015, after finishing work for the day, Plaintiff picked up his wife, Elba Quito ("Ms. Quito"), and together they went to St.

Nicholas Park (the "Park"), in Harlem, Manhattan, to join other family members in celebrating the end of the work week.

15.     Plaintiff, who lives a block from the Park, had been going to the same area on the southern side of the Park with his family for about fifteen years, going there to barbecue on its grills, to eat and socialize, to play volleyball and card games.

16.     That Friday evening, Plaintiff's parents, children, sister, brothers, and a cousin were in the Park.

17.     When Plaintiff arrived at the Park with Ms. Quito, he saw his mother Rosa Pelaez ("Ms. Pelaez") and his sister Maria Quito ("Maria") sitting at a wooden picnic table.  Other family members were playing volleyball.

18.     After Plaintiff greeted his sister and mother at the picnic table, Ms. Pelaez suggested that they play "Burro" (which means "donkey" in English), a card game from their country of Ecuador.

19.     Plaintiff sat with his wife, mother, and sister, and they all began playing Burro on a t-shirt spread out on the table.

20.     The card game Burro involves no money or gambling.  At no point during the card game between Plaintiff and his family members was money ever involved, exposed, exchanged, or visible.

**Encounter with Defendants**

21.     After about ten minutes of playing Burro, two NYPD officers in plain clothes – the individual defendants, PO Guiney and PO Doe – approached Plaintiff and his family members seated around the table.

22.     The only objects on the table were the t-shirt and playing cards.

23.     PO Guiney demanded to know what Plaintiff and the three women were doing.

24.     Just playing cards, they informed him.

25.     When PO Guiney insisted that they were gambling, Plaintiff and his family clearly and credibly denied gambling.

26.     Despite the clear explanation, PO Guiney would not leave.

27.     To further explain to PO Guiney that he was doing nothing wrong, Plaintiff said they were playing cards, but not for money.  Plaintiff explained that while he had money, he was not using the money to gamble in the card game.

28.     To demonstrate the point, Plaintiff took $30 in cash from his pocket.  Just as he did so, PO Guiney snapped and seized the cash and exclaimed, "There's my evidence!"

29.     PO Guiney and PO Doe then arrested Plaintiff, handcuffed him behind his back, and put him inside their police cruiser.

30.     Plaintiff's family tried explaining the innocence of Plaintiff's conduct, but the individual defendants would not listen.

31.     The individual defendants transported Plaintiff to the 26th Precinct (the "Precinct"), at 520 West 126th Street, in Harlem.

32.     Inside the police car, Plaintiff began crying, asking why he was arrested.  The officers told him to calm down, assuring him that he would be released soon.  But Plaintiff would not be released soon.

33.     At the Precinct, Plaintiff was booked and processed, fingerprinted and photographed, searched and detained in holding cells for about three hours.

34.     Afterwards, Plaintiff was taken to another holding cell where he waited a few more hours, and he was later taken to Central Booking in lower Manhattan.

35.     No voucher was ever given to Plaintiff for the $30 that PO Guiney took from him.

36.     Plaintiff remained in the holding cells of Central Booking until, on the afternoon of August 1, 2015, he was arraigned in New York County Criminal Court, at 100 Centre Street, on Docket No. 2015NY048893.

**The Prosecution**

37.     The Criminal Court Complaint (the "Complaint") charged Plaintiff with loitering for the purpose of gambling, a misdemeanor crime under New York State Penal Law Section 240.35(2).

38.     The Complaint was based on the sworn allegations of PO Guiney, who falsely stated, in relevant part:  "I observed the defendant [Plaintiff], along with 3 other unapprehended individuals, at [the Park], a public place, sitting at a table.  I observed that the defendant, as well as each other 3 unapprehended individuals, were each holding playing cards in their hands.  I additionally observed a quantity of United States currency on the table.  When I approached the table along with another police officer, I observed the defendant take all of the money that was on the table and place it into his right front pants pocket.  I then observed the defendant walk away from the table."

39.     Plaintiff was released on his own recognizance but was ordered to return to Criminal Court at 100 Centre Street for a suppression hearing and trial.

40.     Plaintiff returned to Court on two occasions before the charges were dismissed, on November 18, 2015, under Criminal Procedure Law Section 30.30 (Speedy Trial provisions).

41.     Because of the arrest and mandatory court appearances, Plaintiff missed two days of work at Senos Construction, losing about $290 in wages.

### The NYPD's Culture of Mendacity

42.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

43.      There is a systemic failure by the City to identify, discipline, and supervise NYPD officers who fabricate criminal charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

44.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational and destructive custom and policy that fosters a culture of mendacity in the NYPD.

45.     The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to weed out dishonest officers, even when their mendacious behavior abrogates the constitutional rights of citizens.

46.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But NYPD officers usually face only minor discipline or no discipline whatsoever for making false statement on court documents.

47.    The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

48.    In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

49.    Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

50.    As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

51.    The Commission analyzes false statements in official criminal court documents, including supporting depositions, criminal court complaints, summonses, and affidavits. False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent

people.

52.     Despite the importance of appropriately identifying and punishing officers who make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.  Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

53.     For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.  Such findings – which expose the gap between the NYPD's false statement policy and practice – can be found in virtually every Annual Report issued by the Commission.

54.     Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification.  And there is no sign of improvement.

55.     In the specific context of fabricated court documents that falsely accuse innocent people of wrongdoing, the Commission has regularly found grossly inadequate punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

56.     To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.  In the 2010 Annual Report, for instance, the Commission identified only ten IAB

cases that included allegations of making an official false statement.

57.      The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know the system well enough to lie and get away with it.

58.      The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

59.      Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

60.      In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

61.      Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

62.      Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

63.     Through the data cited herein along with well-publicized events (prominent civil rights lawsuits, ticket-fixing, and a secret quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.  By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

64.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

65.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

66.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

67.     While the vast majority of police officers are good honest people, they must operate in a police culture so truth-sick and cynical that their morale is crushed, knowing that roguish behavior is rewarded, trust is thwarted, and virtue is perverted.  As a result, the safety, welfare, and liberty of every citizen are threatened.

**Damages**

68.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

b.   Lost income;

c.   Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

69.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

71.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

72.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

73.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

74.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

75.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

76.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

77.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

78.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

80.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

81.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

82.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83.    Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

84.    The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

85.    As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Municipal Liability Under Section 1983

86.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

87.    By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

88.    As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

### False Imprisonment under N.Y. State Law

89.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

90.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

91.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SECOND CLAIM**

**Malicious Prosecution Under N.Y. State Law**

92.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

93.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

94.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

**THIRD CLAIM**

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

95.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

96.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

97.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

98.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

99.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

100.    As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Respondeat Superior Under N.Y. State Law

101.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

102.    Defendant City is the employer of the individual defendants.

103.    Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment and malicious prosecution committed by the individual defendants against Plaintiff.

104.    As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.      An order awarding compensatory damages for Plaintiff Angel Quito in an amount to be determined at trial;

b.    An order awarding punitive damages in an amount to be

       determined at trial;

c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is

       entitled to reasonable attorney's fees, costs and disbursements; and

d.    Such other and further relief as this Court may deem appropriate.



DATED:    May 4, 2016                    _____/s/_____
          New York, New York            CYRUS JOUBIN, ESQ.
                                         43 West 43rd Street, Suite 119
                                         New York, NY 10036
                                         (703) 851-2467
                                         joubinlaw@gmail.com
                                         Attorney for Angel Quito